# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

===============================

IN THE MATTER OF: . Case #05-13724-MWV

.

FOSS MANUFACTURING CO., INC. . Manchester, New Hampshire
. **September 26, 2005**
Debtor. . 1:10:14 p.m.

===============================


### TRANSCRIPT OF PARTIAL TELEPHONIC HEARING ON:
**(#5)  MOTION BY DEBTOR TO USE CASH COLLATERAL; MOTION FOR ORDERS AUTHORIZING INTERIM USE OF CASH COLLATERAL, GRANTING REPLACEMENT LIENS, REQUIRING RETURN OF FUNDS FROM DEPOSITORY ACCOUNTS; SCHEDULING EMERGENCY HEARING ON INTERIM USE OF CASH COLLATERAL; SCHEDULING FINAL HEARING ON CONTINUED USE OF CASH COLLATERAL;
BEFORE THE HONORABLE MARK W. VAUGHN, J.U.S.B.C.**

**APPEARANCES:**

For the Debtor - Proposed:          ANDREW Z. SCHWARTZ, ESQ.
                                    KENNETH S. LEONETTI, ESQ.
                                    Foley Hoag, LLP
                                    Seaport World Trade Center West
                                    155 Seaport Boulevard
                                    Boston, MA  02110


For the U.S. Trustee:               ERIC K. BRADFORD, AUST
                                    Office of the U.S. Trustee
                                    10 Causeway Street,  11th Fl.
                                    Boston, MA  02222
                                              ----------continued------------


Electronic Sound Recording Operator:   James Palmer

Proceedings Recorded by Electronic Sound Recording
Transcript Produced by Certified Transcription Service

## GCI TRANSCRIPTION SERVICES
**210 Bayberry Avenue**
**Egg Harbor Township, NJ  08234-5901**
**1-609-927-0299      FAX 1-609-927-6420      1-800-471-0299**
**e-mail - irwingloria@comcast.net**

Page 2 Cover
05-13724
9-26-2005

**APPEARANCES**

For Connecticut General Life Insurance       DAVID P. RUSSMAN, ESQ.
Co.,, Life Insurance Company of N.A.:      194 E. Street,   Suite 1
                                               Boston, MA  02127

For Polyquest, Incorporated:            JOSEPH A FOSTER, ESQ.
                                             McLane, Graf, Raulerson & Middleton
                                           900 Elm Street
                                           Manchester, NH  03105-0326

For Creditors Patricia C. Foss, Douglas    PAUL D. MOORE, ESQ.  (Pro hac vice)
Kinney, and Jennifer Smith:           Duane Morris, LLP
                                           470 Atlantic Avenue,  Suite 500
                                         Boston, MA  02210

For CapitalSource Finance, LLC:       CHARLES R. POWELL, III, ESQ.
                                         Devine, Millimet & Branch
                                         111 Amherst Street
                                         Manchester, NH  03105

                                         JOHN P. SIEGER, ESQ.  (Pro hac vice)
                                         JOHN ZUMMO, ESQ.   (Pro hac vice)
                                         Katten Muchin Rosenman, LLP
                                         525 West Monroe Street
                                         Chicago, IL  60661

Electronic Sound Recording Operator:   James Palmer

Proceedings Recorded by Electronic Sound Recording
Transcript Produced by Certified Transcription Service

## GCI TRANSCRIPTION SERVICES
**210 Bayberry Avenue**
**Egg Harbor Township, NJ  08234-5901**
**1-609-927-0299    FAX 1-609-927-6420    1-800-471-0299**
**e-mail - irwingloria@comcast.net**

1  (1:10:14 p.m.)

2          CLERK:   All rise.  Please be seated. Call the case

3  Foss Manufacturing Company, Inc.  This is hearing on the motion

4  for continued use of cash collateral.  Parties please state

5  your appearances for the record.

6          MR. SCHWARTZ:   Good afternoon, Your Honor.  Andrew

7  Schwartz for the debtor.

8          MR. LEONETTI:   Kenneth Leonetti, Foley Hoag, also

9  for the debtor.

10          MR. MOORE:   Paul Moore for the officers and

11  directors of the debtor, Your Honor.

12          MR. RUSSMAN:   David Russman, Your Honor, for

13  Connecticut General Life Insurance and Life Insurance Company

14  of North America.

15          MR. FOSTER:   Joseph Foster for Polyquest,

16  Incorporated.

17          MR. SIEGER:   Your Honor, John Sieger, Katten/Muchin,

18  out of Chicago, appearing *pro hac vice* in behalf of

19  CapitalSource.

20          MR. POWELL:   Charles Powell, Your Honor,

21  CapitalSource Finance, LLC.

22          MR. BRADFORD:   Eric Bradford for the  U.S. Trustee.

23          THE COURT:   Anybody else?

24          MR. ZUMMO:   John Zummo, Katten/Muchin, for Foss,

25  (sic)  *pro hac vice*  -- or not Foss.  CapitalSource.

1          THE COURT:   Okay.  Good afternoon, all of you.  All

2    right.  I believe the only matter that's on for this morn --

3    this afternoon is the cash collateral.  The last hearing we put

4    it off for a week in an interim order, and there was going to

5    be some negotiations.  Maybe you can bring me up to date as to

6    where we stand, Mr. Schwartz?

7          MR. SCHWARTZ:   Certainly, Your Honor.  There have

8    indeed been negotiations and they have been successful.  What

9    we're going to propose to you today is that you enter a second

10   interim cash collateral order, one that will run for a span of

11   five weeks and take us up to Halloween, the end of October; and

12   I can summarize for you the key terms of the stipulated order

13   that we've negotiated with CapitalSource and we're prepared to

14   present to you this afternoon.

15          As I've mentioned, this will provide for consensual

16   use of cash collateral for a five-week period.  We're going to

17   ask, consistent with the Court's schedule, that we have the

18   final hearing on the use of cash collateral on Monday, October

19   31st, or as soon thereafter as your schedule permits.  We will

20   be making a payment to CapitalSource during the course of the

21   five weeks in the aggregate amount of $251,000.  Half of that

22   will be paid on October 1st, the other half on October 15th.

23   That number, the $251,000, has been derived by reference to the

24   monthly interest under this loan facility at the non-default

25   rate.  However, despite its derivation, the cash collateral

1  order is quite explicit that no party is bound by any

2  characterization of the payment, whether it's principal or

3  interest or anything else, is a subject that can be determined

4  later and the rights of all parties and interest are preserved

5  with respect to that.

6      As for replacement liens, we're going to continue

7  with the same program as under the first interim order, and

8  that will provide adequate protection, both to CapitalSource

9  and the PBGC, to the extent either or both of them have an

10  interest to adequately -- adequately protect, also something

11  reserved for another day.

12      One other feature of this second interim order that

13  is new is that the debtor has agreed by October 12th to file a

14  motion for the retention of an investment banker.  I think

15  we've all indicated that one of the more likely exit scenarios

16  here is a sale, and to that end the debtor is interested in --

17  in proceeding to get the necessary personnel involved for that

18  process.  We're not necessarily committing to sell the

19  business, but we certainly want to explore that.  There has

20  already been interest even without an investment banker from

21  certain suitors, and we think there may -- may be quite a few

22  others out there.

23      The cash collateral order also has standard

24  provisions for reporting from the debtor to CapitalSource, for

25  the debtor to respond to inquiries from CapitalSource about

1   business matters, for a weekly meeting between the financial

2   advisors to CapitalSource, and the debtors' operating

3   personnel.  And it also provides that CapitalSource can

4   withdraw its consent to the continued use of cash collateral on

5   72 hours' notice, if the debtor is off more than 7.5 per cent

6   on its net cash flow projections on a cumulative basis.

7           If that were to happen, and the -- CapitalSource was

8   to withdraw consent, then there would be an expedited hearing,

9   at which point we could come in and argue for further use of

10  cash collateral under **Dynaco** or any other case law, but we hope

11  we won't end up in that posture.  And the early returns, albeit

12  just from one week of operations, are sufficiently encouraging

13  to permit me to say that.

14          So we have a proposed order, it has been vetted with

15  CapitalSource's counsel.  Mr. Bradford for the United States

16  Trustee's Office has had a chance to see it, and it may the

17  other parties have comments to make, but at the appropriate

18  time, we'll be prepared to hand it up.

19          THE COURT:  All right, thank you.

20          MR. SCHWARTZ:  Thank you.

21          THE COURT:  All right.  CapitalSource, do you want

22  to be heard?

23          MR. SIEGER:  Yes, Your Honor, thank you.  Again,

24  it's John Sieger.  Your Honor, thank you again for allowing me

25  to appear *pro hac vice*.

1           I agree with everything Mr. Schwartz said.  We sat

2    here last week, Your Honor, and suggested that the company and

3    CapitalSource intended to have a meeting last week.  We did

4    have a meeting, and we think it was a productive meeting.  We

5    think there are -- there's at least the prospect of an agreed

6    formulation, a -- a path to work this case through.

7           One piece that's missing, obviously, is the formation

8    of the Creditors' Committee, and we intend to use the time

9    between now and assuming Your Honor approves this cash

10   collateral order, the expiration, this cash collateral order to

11   sit down with the debtor and CapitalSource and the Creditors'

12   Committee, to talk about an even more definitive plan for next

13   -- from this case, but to date, everything has -- has gone as

14   we have hoped it would when we stood before you last week.

15          To that end, Your Honor, the order, should Your Honor

16   choose to enter it today in the -- in the form that we've

17   worked out, would resolve our preliminary objection to the cash

18   collateral motion.  We would -- assuming that that order is

19   entered today.  We would withdraw that preliminary objection

20   and reserve our rights to object to a final cash collateral

21   order or other order prior to the next hearing, but as we stand

22   here today, we think that the order that's been presented to

23   Your Honor gives everybody an opportunity to sit down and

24   really work this case through and reach an agreed exit to this

25   case.

1          THE COURT:    Okay.   Thank you.   Mr. Bradford?

2          MR. BRADFORD:    Thank you, Judge.

3          THE COURT:    You have a meeting to set up to form a

4  Committee, is that right?

5          MR. BRADFORD:    I do, Your Honor.

6          THE COURT:    Okay.

7          MR. BRADFORD:    That's scheduled for this Wednesday,

8  the 28th, at four p.m.  We're going to be conducting it here in

9  Manchester.  We're also going to have telephone conference

10 capacity, so we're going to get that Committee formed as

11 quickly as possible on Wednesday night.

12          As Mr. Schwartz said, I have had an opportunity to

13 review the draft cash collateral order, albeit briefly.  A

14 couple of things that I note are not in it, not in it.  There's

15 no 506(c) waiver.  There's no lien being granted to the bank on

16 any avoidance actions under Section 544, 547, 548, 549, and

17 550.  There are no Section 364(c) and (d) type protections

18 accorded to the lender.

19          I don't know if there are going to be actual advances

20 on any line here, but I'm treating this strictly as a cash

21 collateral order, and consistent with that, the debtor and the

22 lender are making reference to the New Hampshire wind-down

23 provision.  There is a cash budget, I believe, that was

24 attached to the motion itself that's going to be incorporated

25 by reference in the order.

1          I have asked the parties to consider, consider,

2    during these next several weeks, once the Committee is formed

3    and counsel appointed, carve-outs for the Committee

4    professionals at a minimum, given that it does appear just on a

5    quick look at the debtor's financials that assuming the case

6    did have a 363 motion tee'd up, there would be not only

7    coverage for the lender, but also something left for general

8    unsecured creditors, and I think having Committee professionals

9    given some modest certainty of recovery or covering on their

10   fees, that would be certainly in the Committee's best

11   interests.

12          The only other thing is the debtor is going to be

13   accounting to the lender with actual-to-budget projection

14   trailing information that it is going to be filing with them.

15   I -- I've requested a copy of that.  They've agreed to give it

16   to me, but I think it's also important that that document,

17   periodic as it is, I don't know if it's going to be weekly,

18   semi-monthly, monthly, what have you, I think it's important

19   that that get filed with the Court so everyone can vet for

20   themselves the accuracy of the debtor's prognostications versus

21   its actual performance.

22          That would be the only thing that I would request any

23   different than what's in the four corners of the order today.

24   If that can't be done today, then perhaps that can be the

25   subject of the parties' negotiations, but I -- I think at a

1  minimum, the Court needs to see what's going on.

2        So bottom line, the U.S. Trustee has no objection to

3  the draft order as I've understood it and articulated it on the

4  record here today.

5        THE COURT:   Okay.

6        MR. SCHWARTZ:   If I may, Your Honor, I'd like to

7  speak just to the last point Mr. Bradford made about the filing

8  of the reports that we're going to provide.  The draft order

9  does contemplate that if the United States Trustee or the

10  Committee requests the type of information we're going to be

11  providing to CapitalSource, that the debtor will make that

12  information available to the U.S. Trustee or the Committee.  I

13  -- I think that's more than sufficient in the circumstance.

14        I have a reluctance to agree to file these documents

15  with the Court.  They do reflect information that would not

16  typically be public.  I recognize that with the Chapter 11,

17  some of those protections that a private company might normally

18  have have to give way to some extent, but I think we've struck

19  the appropriate balance here by agreeing already without being

20  asked to make the information available to Mr. Bradford's

21  office or to a Committee, and that ought to be more -- more

22  than sufficient to permit the watchdogs who have those

23  functions in a Chapter 11 case to exercise their

24  responsibilities; but just to file it to make the information

25  available to anybody who has access to the court file, I think

1    that's overkill, and we would resist that request.

2        MR. BRADFORD:   The only rejoinder that I would have,

3    Your Honor, is it's -- it's Arabic numbers, it's financial

4    information, there's nothing scandalous I don't think in it

5    that would implicate Section 107.  So to that extent, I think

6    that it's important that the Court be apprised first and

7    foremost of this financial information.  So to the extent that

8    telemetrics are provided to the Committee and the U.S. Trustee,

9    I think that those need to be made available to everyone.

10       THE COURT:   Well, I assume by making available to

11   U.S. Trustee, the idea is, that if you see something that you

12   think is out of the ordinary, you'll bring it to the attention

13   of the Court.

14       MR. BRADFORD:   Certainly.

15       THE COURT:   Isn't that sufficient?  Put it on your

16   shoulders, Mr. Bradford.

17       MR. BRADFORD:   I'm always of the opinion, Your

18   Honor, that it's better to have complete transparency in a

19   Chapter 11.

20       THE COURT:   Well, maybe at the final hearing we'll

21   have complete transparency.  For now, it seems to me, I'm going

22   to allow the procedures outlined in the proposed order.  You'll

23   get it and you'll have a chance to re -- respond, and the

24   Creditors' Committee, I guess, as soon as they're formed,

25   they'll have a chance also.  Given those two entities, it seems

1   to me if something is wrong, it should be brought to my

2   attention.

3         MR. BRADFORD:   Very well, Judge.   Thank you.

4         THE COURT:   Okay.  Mr. Foster?

5         MR. FOSTER:   Thank you, Your Honor.  I've not had a

6   chance to -- to view the order and I just wanted to make sure

7   that on the declaration of a default, because they're off by I

8   guess at 7.5 per cent, who is going to get notice.  I assume

9   the 20 largest creditors will notice of the declaration of the

10   default by affidavit or some -- some similar procedure?  I just

11   want to confirm that just so that the creditors will know.

12         MR. SCHWARTZ:   Just by way of clarification, I would

13   say that it's not a default in the -- in the sense that you

14   might see under -- under a DIP or something like that.  The way

15   this order works, CapitalSource would be able to withdraw its

16   consent prospectively, and then the burden would be on

17   CapitalSource to seek an expedited hearing to suspend the use

18   of cash collateral, and I'm sure that in seeking such an

19   expedited hearing, CapitalSource would serve any party in

20   interest who'd filed the notice of appearance, including Mr.

21   Foster, to the extent he's done that or will do it, so that

22   everybody will have notice if there is such a proceeding.

23         THE COURT:   Let me -- let me just get that straight

24   then.  If -- if that comes about and the 72-hour provision

25   comes into play, at the end of the 72 hours, do you still have

1  the right to use cash collateral?

2      MR. SCHWARTZ:   Yes, until such time as that -- that

3  motion is -- is heard by you.

4      THE COURT:   Okay.

5      MR. SCHWARTZ:   So I think we're covered, and I think

6  all -- all parties in interest, including Mr. Foster's client,

7  would be protected because anyone who is on the notice list

8  electrically or otherwise will -- will know about this in

9  advance.  Thank you.  May I hand this order up, Your Honor?

10      THE COURT:   Yes.  Anybody else want to be heard

11  either for or against this continued use?

12      MR. RUSSMAN:   Judge, David Russman for Connecticut

13  General Life Insurance.

14      THE COURT:   Yes.

15      MR. RUSSMAN:   I -- I haven't reviewed the budget,

16  and I just wanted to just put on the record that the -- the

17  monthly premium to my client is approximately $350,000, and

18  I've been assured that the budget is accounting for that.  I

19  also just wanted to say on the record on behalf of the Life

20  Insurance Company of North America, the monthly premium is

21  approximately 12,700, so I -- I've been told that the budget

22  accounts for that as well.  Thank you, Judge.

23      THE COURT:   You're welcome.  Well, the budget

24  provides for what, 125,000, 150, 135, 135, on a weekly basis, I

25  assume that that's sufficient to cover --

 1          MR. LEONETTI:   That's correct, Your Honor, the

 2   budget does include those numbers.

 3          MR. RUSSMAN:   Correct.

 4          MR. LEONETTI:   Thank you, Judge.

 5          THE COURT:   Okay.  All right.  The order.

 6          MR. SCHWARTZ:   May I hand it up, Your Honor?

 7          THE COURT:   Yes.  Has this been filed electronically

 8   yet?

 9          MR. SCHWARTZ:   No, it has not.  We just worked it

10   out with the final details a few moments ago.

11          THE COURT:   Okay.

12          MR. SCHWARTZ:   And I believe that's the only copy

13   that exists in its final form. (Pause) Mr. Sieger has reminded

14   me, there are -- there is at least one blank in the -- in the

15   proposed order, Your Honor, concerning the hearing date and any

16   associated objection deadline.  Again, we're asking for October

17   31st, if that works for the Court.  We understand it may not.

18          THE COURT:   When do I go away?

19          CLERK:   Tuesday afternoon.

20          THE COURT:   Oh.

21          CLERK:   So the afternoon (unclear) on the 31st,

22   morning.

23          THE COURT:   Okay.  I guess we can do it at ten

24   o'clock on the 31st.

25          CLERK:   No, the afternoon.

1          THE COURT:   Oh, the afternoon?  One o'clock?

2          CLERK:   (unclear)

3          THE COURT:   I guess we could do it at one -- one

4  o'clock on the 31st.

5          MR. SCHWARTZ:   That would be ideal.  Thank you very

6  much for that, Your Honor.

7          THE COURT:   The only caveat is I -- the National

8  Conference of Bankruptcy Judges starts -- I leave on Tuesday

9  for that.  So to the extent there was any extension of the

10  hearing, it would be a limited amount of time.

11          (Pause)

12          MR. SCHWARTZ:   It appears that sometime between the

13  25th and the 27th would be the consensus view on an objection

14  deadline, Your Honor.

15          THE COURT:   Is there a deadline -- I haven't got

16  there yet.

17          MR. SIEGER:   You want it earlier, the 25th?

18          THE COURT:   Is there an objection deadline in here?

19  Oh --

20          MR. SCHWARTZ:   It is a -- there's a -- right --

21  there's a second blank toward the end --

22          THE COURT:   Okay.

23          MR. SCHWARTZ:   -- last paragraph.  Generally

24  speaking, sooner rather than later is better.  It would give us

25  and you time to study any objections, so I would say no later

1   than the 26th.

2        MR. SIEGER:    The 26th is fine by CapitalSource, Your

3   Honor, that's one of the creditors here.

4        (Pause)

5        THE COURT:    All right.  I've read it.  It appears to

6   be more reasonable than some cash collateral orders I've seen.

7   Actually, it's very reasonable.  I have one question.  This 7.5

8   per cent which is related to net cash flow, are the parties in

9   agreement as to why -- where they look to see what the net cash

10  flow is?  I mean, is that --

11       MR. SIEGER:    Your Honor, I believe we made a change,

12  but hopefully, it's -- it's embodied in the order.  The

13  reference is the defined term in the budget, it's called,

14  quote --

15       THE COURT:    Cumulative cash.

16       MR. SIEGER:    -- "cumulative cash," Your Honor.  That

17  is a defined line item in the budget that was submitted

18  attached to the motion.  We actually made that change to

19  reference exactly the point that you're raising now.

20       THE COURT:    Okay.

21       MR. SIEGER:    And that is just a line item that reads

22  right across.  It's got a number and they have to be at 92.5

23  per cent of that number at any particular point in time, and if

24  they are, sounds like they're well ahead of the game right now,

25  then we keep on going.

Page 16

```
 1                THE COURT:   All right.

 2                MR. SIEGER:   But there is -- there is a definitive

 3   benchmark, yes.

 4                THE COURT:   Okay.  All right.  Everybody's in

 5   agreement that's what it is, cumulative cash?

 6                MR. SCHWARTZ:   Yes.

 7                THE COURT:   Okay.  Why don't I give this back to

 8   you.  If you'll submit this in electronic form with the

 9   modifications, I'll sign it.

10                MR. SCHWARTZ:   All right.  And did you have an

11   object --

12                THE COURT:   Pardon.

13                CLERK:   Objection deadline.

14                THE COURT:   All right.  The objection deadline will

15   be the 26th --

16                MR. SCHWARTZ:   Okay.

17                THE COURT:   -- at four p.m., I believe it says in

18   the order.

19                MR. SCHWARTZ:   All right.

20                THE COURT:   And the hearing will be on the 1st at

21   one -- one p.m.?

22                CLERK:   31st.

23                THE COURT:   31st at one p.m.  Okay.  And I guess

24   that takes care of it.  Anything else?

25                MR. SCHWARTZ:   I don't think so, Your Honor.
```

1           THE COURT:    Mr. Russman, I did approve your *pro hac*

2   *vice,* I don't know if you know that.

3           MR. RUSSMAN:    Thank you, Judge, I appreciate that.

4           THE COURT:    Okay.  Anybody else want to be heard?

5   All right.  Hearing nothing, we will adjourn.  Thank you

6           MR. SCHWARTZ:    Thank you, Your Honor.

7           MR. RUSSMAN:    Thank you, Your Honor.

8           MR. SIEGER:    Thank you, Your Honor.

9   (End at 1:32:45 p.m.)

10                 * * * * * * * * * * *

11           I certify that the foregoing is a true and accurate

12  transcript from the electronically sound recorded record of the

13  proceedings.

---

**SHIRLEY M. GAYLE, for**                          **Date**
**GCI TRANSCRIPTION SERVICES**
**Certified Transcriber NJ AOC200**
      **Federal  CET #122**
**210 Bayberry Avenue**
**Egg Harbor Township, NJ  08234-5901**
**609-927-0299  1-800-471-0299**
      **FAX  609-927-6420**
**e-mail  irwingloria@comcast.net**